IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD ROY MILLER,<br><br>    Petitioner,<br><br>  vs.<br><br>MIKE KNOWLES,[1] Warden (A),<br><br>    Respondent. | No. 2:04-cv-02446-JKS<br><br>MEMORANDUM DECISION |

  Petitioner Donald Roy Miller, a state prisoner appearing *pro se*, has filed this application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Miller is currently in the custody of the California Department of Corrections and Rehabilitation incarcerated at the California Medical Facility, Vacaville, California.

### I.  BACKGROUND/PRIOR PROCEEDINGS

  On November 6, 2001, a jury in the Placer County Superior Court convicted Miller of maintaining a place for the sale or use of methamphetamine, possession of methamphetamine, failure to register as a drug offender, two counts of possession of less than 28.5 grams of marijuana, three counts of furnishing methamphetamine to a minor, four counts of furnishing marijuana to a minor over the age of 14, four counts of furnishing alcohol to a minor, and soliciting a minor to use or sell methamphetamine.  Miller was sentenced to a determinate state prison term of seventeen years, eight months.

  Miller, represented by counsel, timely appealed his conviction and sentence to the California Court of Appeal, which affirmed his conviction in an unpublished written decision on

---

  [1] Mike Knowles, Warden (A), California Medical Facility, is substituted for A.K. Scribner, Warden, Corcoran State Prison.  Fed. R. Civ. P. 17(d).

October 31, 2003,[2] denied rehearing November 26, 2003.  The California Supreme Court summarily denied Miller's petition for review without opinion on January 28, 2004.  Miller timely filed his petition for habeas relief in this Court on November 2, 2004.

## II.  GROUNDS PRESENTED/DEFENSES

In his second amended petition Miller raises two grounds:  (1) the trial court improperly defined the word "furnishing" in response to a question from the jury and (2) insufficiency of the evidence to support specific counts.  Respondent concedes that Miller has exhausted his state court remedies as to these grounds.

## III.  STANDARD OF REVIEW

Because Miller filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Consequently, this Court cannot grant relief unless the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[3]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[4]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[5]  When a claim falls under the "unreasonable application" prong, a state court's application of the Supreme Court

---

[2] Available on-line at 2007 WL 22463957 (Cal.App. 3 Dist.)  The Court of Appeals did modify Miller's sentence in particulars not relevant to the proceeding before this Court.

[3] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard).

[4] *Williams v. Taylor*, 529 U.S. at 412.

[5] *Carey v. Musladin*, 549 U.S. 70, ___, 127 S.Ct. 649, 654 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. ___, ___, 128 S.Ct. 743, 746-47 (2008) (per curiam).

precedent must be "objectively unreasonable, "not just incorrect."[6]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing the state court determination was incorrect.[7]  Finally, in a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.[8]

In applying this standard, this Court reviews the last reasoned decision by the state court,[9] which in this case was that of the California Court of Appeal.  In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[10]

To the extent that Miller raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.[11]  A federal court must accept that state courts correctly applied state laws.[12]  A petitioner may not transform a state-law issue into a federal one by simply asserting a violation of due process.[13]  A federal court may not issue a habeas writ based upon a perceived error of state law

---

[6] *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003).

[7] *Schriro v. Landrigan*, 550 U.S. ___, ___, 127 S.Ct. 1933, 1939 (2007).

[8] *Fry v. Pliler*, 551 U.S. ___, ___, 127 S.Ct. 2321, 2328 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

[9] *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004)

[10] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[11] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[12] *Bell v. Cone,* 543 U.S. 447, 455 (2005); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law) *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

[13] *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

unless the error is sufficiently egregious to amount to a denial of due process under the Fourteenth Amendment.[14]

## IV.  DISCUSSION

Ground 1:  Improper Instruction.

In rejecting his challenge on direct appeal, the California Court of Appeal extensively discussed the propriety of the supplemental instruction defining "furnishing" and "furnish" given by the trial court.[15]

The decision of the Supreme Court in *In re Winship*,[16] clearly established that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  As a consequence, a jury instruction is constitutionally defective if it "ha[s] the effect of relieving the State of the burden of proof enunciated in *Winship*."[17]  It is also clearly established that due process and the Sixth Amendment to the Constitution require that a jury be correctly instructed as to every element of the crime with which a defendant is charged and convicted.[18]  Although the sufficiency of the review by this Court is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the crime as set forth in state law,[19] and the Court accepts, as it must, the California court's identification of the elements of the offense.[20]

In this case, the precise issue presented to the California Court of Appeal was whether an essential element of the crimes, "furnishing," was properly defined.  The California Court of Appeal found that "furnishing" and "furnish" were properly defined by the trial court under California law.  This Court is bound by that determination.  Nor does the definition approved by

---

[14] *See Pulley v. Harris*, 465 U.S. 37, 41 (1984).

[15] The excerpt of that opinion addressing the issue is appended hereto as Appendix 1.

[16] 397 U.S. 358, 364 (1970).

[17] *Sandstrom v. Montana,* 442 U.S. 510, 521 (1979).

[18] *See United States v. Gaudin*, 515 U.S. 506, 522–23 (1995)

[19] *See Jackson v. Virginia*, 443 U.S. 307, 324 n.16 (1979).

[20] *See Illinois v. Vitale,* 447 U.S. 410, 416 (1980); *Newton v. Superior Court of California*, 803 F.2d 1051, 1058 (9th Cir.1986).

the Court of Appeal effectively relieve the State of the burden of proof on the element as required by *Winship*. Consequently, this Court cannot say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[21] Nor can this Court find that the Court of Appeal unreasonably applied the correct legal principle to the facts of the Miller's case, *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.[22] Miller is not entitled to relief under his first ground.

> Ground 2:  Insufficiency of the Evidence.

In rejecting his challenge to the sufficiency of the evidence on direct appeal, the California Court of Appeal extensively discussed the sufficiency of the evidence in its written opinion.[23] As stated by the Supreme Court in *Jackson v. Virginia*,[24] the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This court must, therefore, determine whether the decision of the California Court of Appeals on the merits unreasonably applied *Jackson*.

Miller misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction.  This Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses.  Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction.  That such evidence exists is clearly established by the record in this case.  Miller bears the burden of establishing by clear and convincing evidence that the factual findings of the jury were erroneous; a burden Miller has failed to carry.

---

[21] 28 U.S.C. § 2254(d).

[22] *Lockyer–Williams–Schriro*.

[23] The excerpt of that opinion addressing the issue is appended hereto as Appendix 2.

[24] 443 U.S. at 319 (emphasis in the original).

As noted above, it is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.[25]  Consequently, as with the propriety of an instruction, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the crime as set forth in state law.[26]  This Court must also be ever mindful of the deference owed to the trier of fact and the sharply limited nature of constitutional sufficiency review.[27]

In this case, the California Court of Appeal found that there was sufficient evidence under California law as interpreted and applied by the Court of Appeal.  This Court cannot say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[28]  Nor can this Court find that the Court of Appeal unreasonably applied the correct legal principle to the facts of the Miller's case, *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.[29]   Miller is not entitled to relief under his second ground.

V.  CONCLUSION AND ORDER

Accordingly, because Miller is not entitled to relief under either ground asserted,

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[30]  All federal constitutional issues were addressed by the California Court of

---

[25] *Engle v. Isaac, supra*.

[26] *Jackson v. Virginia, supra*.

[27] *Juan H. v. Allen*, 406 F.3d 1262, 1275 (9th Cir. 2005).

[28] 28 U.S.C. § 2254(d).

[29] *Lockyer–Williams–Schriro*.

[30] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted
(continued...)

Appeal and deemed addressed by the California Supreme Court on direct appeal, and no reasonable jurist could find that those decisions were "objectively unreasonable."

The Clerk of the Court shall enter final judgment accordingly.

Dated: September 26, 2008.

s/ James K. Singleton, Jr.<br>
JAMES K. SINGLETON, JR.<br>
United States District Judge

---

[30](...continued)
where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (internal quotation marks and citations omitted)).

APPENDIX 1

### I. The Trial Court Did Not Err In Defining "Furnish" for the Jury

Defendant was charged with "furnishing" methamphetamine, marijuana, and alcohol to all four young victims. He argues that the definition of "furnishing" given to the jury "was erroneous, for it included passive conduct, such as making the drugs merely 'available' to a minor," but that "[l]eaving drugs in a state of availability, accessible to a minor, is not the sort of active transfer to a minor that the transitive verb 'to furnish' defines."

*A. The Instructions on "Furnishing"*

Three different statutes dealt with furnishing prohibited substances to minors in this case, depending upon the particular substance involved.

Health and Safety Code section 11380, subdivision (a), punishes any "person 18 years of age or over . . . who unlawfully furnishes, offers to furnish, or attempts to furnish those controlled substances [including methamphetamine] to a minor. . . ."

The jury was instructed pursuant to CALJIC No. 12.15 that to find defendant guilty of violating this statute, it must find that he "*furnished* methamphetamine" to Jennifer D., Grace, Lucy, and Lila, as alleged.  (Italics added.)

Health and Safety Code section 11361 specifically prohibits an adult from furnishing *marijuana* to a minor. It punishes any "person 18 years of age or over who furnishes, administers, or gives, or offers to furnish, administer, or give, any marijuana to a minor 14 years of age or older . . . ." (Health & Saf. Code, § 11361, subd. (b).)

For purposes of this statute, the jury was instructed pursuant to CALJIC No. 12.29 that to find defendant guilty, it must find that he "*furnished,* administered, or gave marijuana" to Jennifer D., Grace, Lucy, and Lila, as alleged. (Italics added.)

Business and Professions Code section 25658, subdivision (a), prohibits "furnishing" alcohol to a person under the age of 21. It states in relevant part that "every person who . . . furnishes, gives, or causes to be . . . furnished, or given away, any alcoholic beverage to any person under the age of 21 years is guilty of a misdemeanor."  (Bus. & Prof. Code, § 25658, subd. (a).)

For purposes of the statute, the jury was instructed pursuant to CALJIC NO. 16.010 that to find defendant guilty, it must find he "*furnished,* [or] gave" an alcoholic beverage to Jennifer D., Grace, Lucy, and Lila, as alleged. (Italics added.)

During deliberations, the jury sent a written request, asking the judge to "[d]efine the word furnishing."  In response, the court provided the following supplemental instruction: " 'Furnish' means to supply or provide in any way, including giving or making item available for use."

## *B. The Court Did Not Err in Defining "Furnish"*

As noted, defendant contends on appeal that the "court improperly defined the word 'furnishing' in response to a question from the jury" because "it included passive conduct, such as making the drugs merely 'available' to a minor."

When a jury requests further clarification of a word in a jury instruction, Penal Code section 1138 is triggered. That section provides that if, after the jury has retired for deliberations, it "desire[s] to be informed on any point of law arising in the case," the information must be given, in the presence of defense counsel. (*People v. Solis* (2001) 90 Cal.App.4th 1002, 1015.) The trial court "has a primary duty to help the jury understand the legal principles it is asked to apply. [Citation.] This does not mean the court must always elaborate on the standard instructions. Where the original instructions are themselves full and complete, the court has discretion under [Penal Code] section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information. [Citation.] Indeed, comments diverging from the standard are often risky. [Citation.]" (*People v. Beardslee* (1991) 53 Cal.3d 68, 97; *People v. Solis, supra,* 90 Cal.App.4th at p. 1015.) "However, '[a] definition of a commonly used term may nevertheless be required if the jury exhibits confusion over the term's meaning. [Citation.]' " (*Ibid.,* citing 5 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Criminal Trial, § 633, p. 906.)

Whether the court should have deemed the form instructions sufficient and declined to offer any additional guidance is reviewed under an abuse of discretion standard. (*People v. Waidla* (2000) 22 Cal.4th 690, 745-746.)

In this case, we cannot agree that the court abused its discretion in offering a definition of "furnish."[FN8] And we do not agree with defendant that the trial court erred in defining "furnish" to mean "to supply or provide in any way, including giving or making item available for use."

---

[FN8.] The record is silent on whether defendant objected to the trial court's decision to offer a supplemental instruction on the definition of the word "furnish." The Attorney General argues that a defendant may waive a violation of Penal Code section 1138, citing *People v. Frye* (1998) 18 Cal.4th 894, 1007, and other cases.

> But *Frye* addressed counsel's waiver of an objection to the trial court's failure to correctly respond to the jury's request to hear certain *testimony,* not a request for an *instruction.*(*People v. Frye, supra,* 18 Cal.4th at pp. 1006-1007.) Furthermore, the Supreme Court did not decide the waiver issue in *Frye,* but instead found the error harmless. In any event, even if the rights under Penal Code section 1138 can be waived, the failure to object to an instruction at trial does not normally preclude review if the instruction may have affected the defendant's substantive rights. (Pen. Code, § 1259 ["The appellate court may . . . review any instruction given, . . . even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby"]; see *People v. Flood* (1998) 18 Cal.4th 470, 482, fn. 7.) Since Penal Code section 1259 directly addresses the issue of waiver of instructional error, it governs the waiver issue over any general principle of waiver applied to Penal Code section 1138. (*People v. Hillhouse* (2002) 27 Cal.4th 469, 505-506.)

Health and Safety Code sections 11380 (furnishing controlled substances to a minor) and 11361 (furnishing marijuana to a minor 14 years of age or older) are part of the California Uniform Controlled Substances Act (Health & Saf. Code, § 11000 et seq.). T hat Act adopts the definition of "furnish" contained in former Business and Professions Code section 4048.5. Specifically, Health and Safety Code section 11016 (which is part of the Act) provides: " 'Furnish' has the same meaning as provided in [former] Section 4048.5 of the Business and Professions Code." In turn, former section 4048.5 of the Business and Professions Code provided: " 'Furnish' means to supply by any means, by sale or otherwise."[FN9]

---

[FN9.] Business and Professions Code section 4048.5 was repealed in 1996, but Health and Safety Code section 11016-which refers to that provision-has not been amended to reflect that change.

---

In this case, the first part of the trial court's supplemental instruction clearly followed this definition by stating that " 'furnish' " meant "to supply or provide in any way," but it then added "including giving or making item available for use." Defendant's specific complaint concerns that part of the supplemental instruction that defined "furnish" as including "making item available for use." In defendant's view, a social host who merely makes "drugs . . . available for use at [the] gatherings" by minors, who, in turn, partake of the available drugs "of their own volition," cannot be criminally liable for furnishing drugs to minors.

We disagree. " '[S]tatutes must be construed so as to give a reasonable and common-sense construction consistent with the apparent purpose and intention of the lawmakers-a construction that is practical rather than technical, and will lead to wise policy rather than mischief or absurdity. [Citation.]'" (*People v. Turner* (1993) 15 Cal.App.4th 1690, 1696, disapproved on another ground in *People v. Flores* (2003) 30 Cal.4th 1059, 1068.) Any common sense construction of "furnish" pursuant to Health and Safety Code section 11016's definition of "supply by any means, by sale or otherwise" (former Bus. & Prof. Code, § 4048.5) must cover an adult who invites minors to a private place where he makes drugs and alcohol available to them. By specifically inviting minors to the private place where those prohibited substances are made available, the adult has furnished those substances by any reasonable definition, that is, he has supplied them.

Indeed, in the related context of an adult furnishing alcohol to minors (Bus. & Prof. Code, § 25658, subd. (a)),[FN10] this court has held that a social host who controls the alcohol in his home and who takes "some affirmative step to supply it to the drinker," including an authorization of its use by the minors, has "furnished" it within the meaning of the statute. (*Sagadin v. Ripper* (1985) 175 Cal.App.3d 1141, 1158 (*Sagadin* ).) That is precisely the case here.

---

[FN10.] Business and Professions Code section 25658, subdivision (a), provides in pertinent part that "every person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverage to any person under the age of 21 years is guilty of a misdemeanor."

---

In *Sagadin,* minors injured in a car accident after leaving a Halloween party sought to hold the teenage host's parents civilly liable for violating Business and Professions Code, section 25658, subdivision (a).  (*Sagadin, supra,* 175 Cal.App.3d at pp. 1151, 1153.)  The host's father knew about the party in advance and told his son that if the guests (whom he knew to be underage) drank any of the father's beer, it would have to be replaced.  (*Id.* at p. 1149.)  The plaintiffs and other guests helped themselves to the father's beer after the host's parents had left the house.  (*Ibid.*)

We explained that "furnishing" alcohol to minors requires an affirmative act: " 'The word "furnish" implies some type of affirmative action on the part of the furnisher . . . .' [Citation.]  Among other things, it means to supply, to give, or to provide.  [Citation.]  Consequently, allegations which do not allege that the defendant 'actually furnished liquor' fail to state a cause of action for negligence under a furnishing statute. [Citation.]  Thus allegations that the defendant apartment owners 'permitted' the driver to drink or that the defendant apartment manager in some unspecified manner 'aided, abetted, participated and encouraged' the driver to drink to excess are insufficient. [Citation.] ...*Weiner [v. Gamma Phi Chap. of Alpha Tau Omega Frat.*(1971) 258 Ore. 632 [485 P.2d 18, 22]]. . . held that no liability arose for merely supplying the host with alcohol or providing a room where alcoholic beverages are served, even when the supplier and the proprietor had knowledge that minors would be served.  Similarly, the failure of university officials to stop a campus drinking party does not constitute the affirmative act of furnishing alcohol.  [Citation.]  Nor does the mere act of contributing to a common fund for the purchase of liquor constitute furnishing where the defendant never exercised any control over the alcohol consumed by his companions.  [Citation.]  Finally, the failure to protest or to attempt to stop another from drinking in one's presence is not such an affirmative act of furnishing.  [Citation.]  In short, nonfeasance does not violate the statute."  (*Sagadin, supra,* 175 Cal.App.3d at p. 1157.)

That said, we found that the defendant father in *Sagadin* had "furnished" beer to the plaintiffs within the meaning of the statute.  Although providing a location with the knowledge that alcohol would be served to the minors and failing to prohibit the use of the beer was arguably insufficient to constitute furnishing, we explained:  "The jury had before it Mr. Boal['s] testimony that he told his son that if parental beer was used, it would have to be replaced.  Although the inference is not compelled, the jury could reasonably have inferred this was authorization to use the beer.  A permissible inference from this undisputed testimony was that Mr. Boal tacitly authorized his son to provide his beer to the plaintiffs.  The jury drew that inference and we, like the Boals, are bound by it.  [Citation.]  Such an authorization constitutes the requisite affirmative act as a matter of law. In order to furnish an alcoholic beverage the offender need not pour the drink; it is sufficient if, having control of the alcohol, the defendant takes some affirmative step to supply it to the drinker.  By authorizing his son to supply beer to the underage partygoers, Mr. Boal's act was one of misfeasance rather than nonfeasance; his affirmative conduct created the risk. Robert Boal may then be said to have furnished beer."  (*Sagadin, supra,* 175 Cal.App.3d at p. 1158.)

Even if we were to agree that the defendant in this case did nothing more than make drugs available for the girls to use, his actions in the context of this case constituted the kind of

affirmative act—an authorization of drug use—that we found to constitute "furnishing" in *Sagadin* when applied to alcohol. It was not just that defendant's drugs were "present" at parties; defendant *hosted* the parties (with the exception of the one at Jennifer D.'s house); he supplied the drugs and alcohol (including at Jennifer D.'s house); and he *put* the drugs out so as to invite the girls to use them. In the context of parties *hosted* by defendant *for* the minors, defendant furnished the drugs or alcohol when he made them "available for use," thereby authorizing the minors to consume those substances. Such a definition is consistent with the statutory definition of furnish, "to supply *by any means* " (former Bus. & Prof. Code, § 4048.5, italics added; Health & Saf. Code, § 11016).

To paraphrase *Sagadin,* in order to furnish illegal drugs, the offender need not fill the pipe; it is sufficient if, having control of the drugs, the defendant took some affirmative step to supply it to the minors. (Cf. *Sagadin, supra,* 175 Cal.App.3d at p. 1158.)

This is not a case of defendant supplying the prohibited substances to merely a third party who supplied them to the minors or a failure to stop the minors from using the substances. Defendant directly made the prohibited substances available for the minors at parties to which he invited them, or he alternatively brought the prohibited substances to a party (at Jennifer D.'s house) held for the minors elsewhere. He therefore supplied them in either case. The trial court properly defined the word "furnish" in the context of this case.

In his reply, defendant suggests that if "furnish" only requires making the prohibited substance available for use, "then every parent who keeps beer in the home refrigerator would be guilty of violating Business and Professions Code section 25658, even though minor children in the household do not drink it." But defendant's example does not make the beer "available for use" in the sense of authorizing the children to use it; it only makes the beer accessible for use.

Moreover, in this case, the girls testified that defendant did far more than make the drugs and alcohol "available" for use: He expressly offered drugs to the girls, saying, "Here take it," and gave them drugs, going so far as to prepare "lines" of methamphetamine for them to snort and to fill marijuana pipes for them to smoke. There was no error in the trial court's instruction in the factual context of this case.

APPENDIX 2

Defendant argues that his convictions on counts 2, 8, and 12 must be reversed because they are not supported by substantial evidence.

In reviewing defendant's claims regarding the sufficiency of the evidence, we must "review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence-that is, evidence which is reasonable, credible, and of solid value-such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."(*People v. Johnson* (1980) 26 Cal.3d 557, 578;*People v. Kipp* (2001) 26 Cal.4th 1100, 1128.)  We use the same standard when circumstantial evidence is reviewed.  (*People v. Bean* (1988) 46 Cal.3d 919, 932.)And it is the jury, not the appellate court, which must be convinced of the defendant's guilt beyond a reasonable doubt. (*Id.* at p. 933.)  Thus, before a judgment of conviction can be set aside for insufficiency of the evidence, it must clearly appear that upon no hypothesis whatsoever is there substantial evidence to support it.  We " 'view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.'  [Citations.]" (*People v. Johnson, supra,* 26 Cal.3d at pp. 576-577.)

## A. Substantial Evidence Supports Defendant's Conviction on Count 2 for Possession of Methamphetamine

Count 2 alleges defendant possessed methamphetamine on or about October 24, 2000. That charge is based on the methamphetamine "that was found inside and snorted with the [hollow] pen," as argued by the prosecution.

Defendant contends that the "evidence was insufficient to support a conviction, because the methamphetamine was found in a state of useless residue coating an ingestion device" and "because there was insufficient evidence that [defendant] knew of its presence and nature as a usable controlled substance."

"The essential elements of possession of a controlled substance are 'dominion and control of the substance in a quantity usable for consumption or sale, with knowledge of its presence and of its restricted dangerous drug character.  Each of these elements may be established circumstantially.' [Citations.]" (*Palaschak, supra,* 9 Cal.4th at p. 1242.)

Possession can be established by either actual possession or constructive possession. (*People v. Austin* (1994) 23 Cal.App.4th 1596, 1608-1609,disapproved on other grounds in *People v. Palmer* (2001) 24 Cal.4th 856, 861-867.)

In this instance, since the hollow pen, which was found to contain methamphetamine, was not on defendant's person, the basis for his conviction was constructive possession.  The pen was found, among his other personal effects, in the room that defendant rented from Mrs. Archer.  Until his eviction, defendant had dominion and control over the premises where the hollow pen containing the methamphetamine powder was found.  This is sufficient to establish that defendant had constructive possession of the methamphetamine.  (See *People v. Rushing* (1989) 209 Cal.App.3d 618, 622.)

We next turn to whether the evidence was sufficient to show the substance was in a usable quantity. As we have explained, the presence of the drug alone will not be sufficient to sustain a conviction if the drug is present only in useless trace amounts. (*People v. Rubacalba, supra,* 6 Cal.4th at p. 66; *Leal, supra,* 64 Cal.2d at pp. 510-512.)

But we have already rejected defendant's argument that "the methamphetamine was found in a state of useless residue[,] coating an ingestion device." (See Discussion, part II, *ante.*) The methamphetamine found to coat the interior of the pen was not "useless"; once removed from the interior of the pen, it remained in its original powdery form, capable of consumption and usable in amount, according to the criminalist.

Defendant's next argument-that there was insufficient evidence that defendant "knew that there was a usable quantity of methamphetamine residue on the interior wall of the pen"-also fails. First, the testimony of Grace, Jennifer D., and Jennifer Roberts that defendant possessed and supplied methamphetamine during the relevant period provides some circumstantial evidence that he knew that a device used for using methamphetamine still contained limited amounts. It was reasonable to infer that defendant did not believe the pen had been "snorted clean." Second, the remaining methamphetamine lining the hollow pen was circumstantial evidence of a greater amount possessed in the pen (over which defendant had dominion and control) before the drug was used. Thus, even if defendant did not know that any methamphetamine was left in the pen-an unreasonable inference-he certainly knew there was methamphetamine in the pen before it was used.

### B. Substantial Evidence Supports Defendant's Conviction on Count 12 for Furnishing Methamphetamine to Lucy

Defendant contends that insufficient evidence supports his conviction on count 12 for furnishing methamphetamine to Lucy at the Valentine's Day party. He bases this on Lucy's testimony that she did not know who provided the methamphetamine in the pipe that was being passed around at the party. Instead, defendant argues, another guest, Tammy, persuaded Lucy to smoke from the methamphetamine pipe, and thus there was "insufficient evidence to prove that [defendant] *furnished* methamphetamine to Lucy."

First, whether Lucy was aware of the ultimate source of the methamphetamine is immaterial. Grace testified that defendant supplied the methamphetamine for the guests at the party. The testimony of one witness is sufficient to sustain defendant's conviction. (See *People v. Barnes* (1986) 42 Cal.3d 284, 286.)

Second, as we pointed out in part I of the Discussion, *ante,* because defendant supplied the methamphetamine and authorized its use by the girls at the party, including Lucy, he unlawfully "furnished" the methamphetamine to Lucy.

### C. Substantial Evidence Supports Defendant's Conviction on Count 8 for Furnishing Alcohol to Jennifer D.

Count 8 alleged that on or about and between August 1, 2000 and October 21, 2000, defendant furnished alcohol to a person under 21 years of age, who was identified in the jury instructions as

Jennifer D.

At trial, Grace testified that when Jennifer D. accompanied her to defendant's room at the Archer house at the beginning of the school year, the girls both used alcohol, "pot," and "crank," and that all of these items were furnished by defendant.[FN12] Grace gave similar testimony about the October 21 party at Jennifer D.'s house, i.e., that "everybody" there consumed methamphetamine, marijuana, and alcohol furnished by defendant.[FN13]

---

[FN12] "Q: During that period of time, the beginning of the school year, September, October, how many times did you and Jen [Jennifer D .] go over to his apartment?

"A: A couple.

"Q: When you were there, would you guys use the same kind of stuff, alcohol?

"A: Yeah.

"Q: Pot?

"A: Yeah.

"Q: And crank?

"A: Yeah.

"Q: And were all of these items furnished to you by the defendant?

"A: Yeah."

[FN13.] "Q: At Jen's house did you do crank and marijuana?

"A: Yeah.

"Q: And alcohol as well?

"A: Yeah.

"Q: Who furnished those items to you?

"A: The defendant. [¶] ... [¶]

"Q: And as far as people being there, it was the defendant, Jen Roberts, yourself, Lila, Jen [D.] and Danielle[,] correct?

"A: Yeah.

"Q: Did everybody there partake in methamphetamine to your knowledge?

"A: Yes.

"Q: What about pot?

"A: Yeah.

"Q: What about alcohol?

"A: Yeah.

"Q: And all three of those substances were furnished to the girls by the defendant?

"A:  Yeah."

Defendant contends that this testimony "did not establish, with solid substantial evidence, that Jennifer D. was included within the group" who consumed the alcohol, in view of Jennifer D.'s own testimony that she "didn't drink.  I'm not much into drinking but there was weed and if people chose to drink they chose to drink."

However, even if we construe Jennifer D.'s testimony that she "didn't drink" as an emphatic denial that she ever consumed alcohol provided by defendant, Grace's general testimony that "everybody" drank and that at the beginning of the school year she and Jennifer "use[d]" alcohol in defendant's room provided sufficient evidence.  The jury, not this court, determines the credibility of Jennifer D.'s denial for purposes of the issue of substantial evidence. (*People v. Bean, supra,* 46 Cal.3d at p. 933.)  Thus, Grace's testimony was sufficient, given that any contrary conclusion is a matter of the jury's judgment over the witnesses' credibility.

In any event, defendant's conviction for *furnishing* alcohol to Jennifer D. does not require that she have *consumed* it.  As we have explained (see Discussion, part I.B., *ante* ), furnishing alcohol to minors requires only that the adult have control over it and that the adult authorize its use by minors. (*Sagadin, supra,* 175 Cal.App.3d at p. 1158.)  Although the operative statute also provides that a *minor* may violate the statute by buying alcohol or consuming it on an "on-sale premises" (Bus. & Prof. Code, § 25658, subd. (b)), the portion of the statute that prohibits an adult from furnishing the alcohol to a minor does not require that the minor consume it. (Bus. & Prof. Code, § 25658, subd. (a).) The evil to be prevented by that part of the statute lies not in the minor's consumption of the alcohol, but in the adult's taking "some affirmative step to supply it" to the underage drinker.

Accordingly, defendant's challenge to his conviction on count 8 fails.